**United States District Court**
For the Northern District of California

United States of America,    )
                             )
          Plaintiff,         )
                             )
     v.                      )
                             )    No. CR-08-0233 DLJ
Ethan Berry,                 )
                             )    **AMENDED ORDER**
          Defendant.         )
_____)

        On December 10, 2009 Defendant Ethan Berry (Berry) was found guilty by a jury of Social Security Fraud.  On January 22, 2010, Berry filed a motion for acquittal and a motion for a new trial. On March 12, 2010 this Court held a hearing on the motions.  Attorney Christina McCall appeared on behalf of the United States and defendant was represented by Attorney Patrick Robbins.  Having reviewed the papers and having heard oral argument on this matter, the Court finds the following.

I.  BACKGROUND

        Defendant was charged with Social Security representative fraud in violation of 42 U.S.C. § 408(5)(a). The indictment alleges that between May 2005 through November 2006, Berry unlawfully obtained and converted for his own use $53,541 in federal funds that were designated for the benefit of his minor son.

        Trial in this matter was held on December 7, 2009 to December 10, 2009.  At trial the government introduced evidence regarding the following information.  On October 10, 1997, Kim Walker ("Walker") gave birth to a son named Drew, fathered by Ethan Berry. Shortly after Drew's birth, Walker and Berry began

**United States District Court**
For the Northern District of California

what would turn out to be a lengthy and highly contentious custody dispute in Contra Costa County Superior Court.

In July of 1999, Berry was in an automobile accident, which led to a serious back injury. In March of 2000, Berry applied for Social Security disability benefits. The Social Security Administration (SSA) initially denied his application, finding that he was not disabled under the Act. Berry appealed and the case was remanded. On March 22, 2005, Administrative Law Judge Gary Lee held that Berry had been disabled in 1999, and authorized Berry to receive disability insurance benefits dating back to March 2000, the date of his application.

Shortly after receiving his disability benefits, Berry applied for social security benefits for his minor son Drew, which Drew was eligible to receive because he has a disabled father. The SSA approved the application and awarded the benefits to Drew and upon Berry's application, designated Berry as Drew Berry's representative payee, sending the money to Berry in trust for his child.

On July 18, 2005, SSA issued Berry a retroactive benefit check for Drew Berry in the amount of $42,086, for benefits dating back to March 2000 (the date of Berry's application for disability benefits). The SSA subsequently mailed monthly benefits checks to Berry for his son Drew, and continued to do so until October 2006.

Berry was charged in an indictment with social security representative fraud in violation of 42 U.S.C. § 408(a)(5). The indictment alleges that between May 2005 through November 2006,

**United States District Court**
For the Northern District of California

Berry unlawfully obtained and converted for his own use $53,541 in federal funds that were designated for the benefit of his minor son.

The evidence at trial showed that the checks Berry received on his son's behalf from July 2005 to November 2006 were all deposited into an account at Wells Fargo Bank, except for one check which was deposited into an account at Scottrade, Inc.

The Wells Fargo account into which most of the checks were deposited is a business account opened by Berry's sister Diane Williams on August 23, 2005. Ethan Berry was added as co-signatory on September 16, 2005. The name on the account as well as on the checks is "Partner Database," with an address of 484 Lake Park Avenue, Suite 160, in Oakland, which is a commercial mail drop facility. On the same day that Berry was added as a co-signatory, he deposited Drew's check issued by the Social Security Administration for $42,086. Six days later, on September 22, 2005, Diane Williams withdrew $41,500 from the Wells Fargo account and deposited the withdrawn funds into her personal account at Pioneer Savings Credit Union.

At the conclusion of the evidence, the jury found Berry guilty.  Subsequently defendant filed this Motion for Acquittal and a Motion for a New Trial.

II. Discussion

    A.  Motion for Acquittal

        1.  Legal Standard

Federal Rule of Criminal Procedure 29 provides, in part:

**United States District Court**

For the Northern District of California

After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  In determining the sufficiency of the evidence on a Rule 29 motion, the Court should review the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Atkinson, 990 F.2d 501, 502 (9th Cir. 1993) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

   2.  Could a Rational Trier of Fact Find Beyond a Reasonable Doubt that the Defendant Converted Social Security Benefits

   The elements which the government needed to prove for a conviction on Social Security representative fraud were: (i) Berry made an application to receive a Social Security benefit for the use and benefit of another person, his minor son, Drew; (ii) Berry received such a benefit payment; (iii) Berry converted the benefit payment, or any part thereof, to a use other than for the use and benefit of the other person, his minor son; and (iv) Berry converted the payments knowingly and willfully.

   Berry claims that the government failed to present sufficient evidence with respect to elements (iii) and (iv)

**United States District Court**
For the Northern District of California

1    above. The issue defendant raises through the motion for

2    acquittal is whether, based on the testimony at trial, a

3    reasonable jury could have found that Berry had converted the

4    payments, or any part of them, looking at the money from the

5    SSA that Berry had placed in the bank accounts.

6        Berry does not argue that he expended any of the funds

7    he received from the SSA for his son's current expenses, or on

8    behalf of his son in any manner.  Rather, Berry argues that the

9    evidence was consistent with a finding that Berry "conserved"

10   the money from the SSA for potential use for his son at some

11   point in the future.

12       The evidence at trial showed that the money was placed

13   into two specific bank accounts and a Scottrade account. The

14   gravamen of defendant's argument for acquittal is that since

15   the ending balances of these accounts were equal to or larger

16   than the total amount of money received from the SSA that the

17   jury therefore should have concluded that Berry had "conserved"

18   the money sent to him by the SSA on Drew's behalf.  Therefore

19   Berry argues, no reasonable jury could have concluded that

20   Berry had converted these funds.

21       As support for his argument that his actions were

22   appropriate, defendant cites to the SSA's Programs Operations

23   Manual System ("POMS"), which states that "Misuse of benefits

24   occurs when the payee neither uses benefits for the current and

25   forseeable needs of the beneficiary, nor conserves benefits for

26   the beneficiary." Defense ("Def.") Ex. H (POMS GN 00604.001)

27   (emphases added); see also Government ("Govt.") Ex. 9

28

**United States District Court**
For the Northern District of California

1    (Pamphlet); 20 C.F.R. Section 404.2040 ("Savings" listed in

2    example of acceptable expenditures for "current maintenance").

3    But see 20 C.F.R. Section 404.2045 stating that funds may only

4    be conserved if the beneficiary's current needs are being met.

5        This argument ignores a number of critical pieces of

6    evidence presented to the jury.  First, evidence was presented

7    at trial that the creation and maintenance of these accounts

8    did not comport with SSA regulations. The Wells Fargo account

9    into which most of the checks were deposited is a business

10   account opened by Berry's sister Diane Williams on August 23,

11   2005. Ethan Berry was added as co-signatory on September 16,

12   2005. The name on the account as well as on the checks is

13   "Partner Database."  The account did not reference Drew Berry

14   in any way.

15       Additionally, one of the checks was deposited directly

16   into Diane Williams' Scottrade account.  This account belonged

17   entirely to Diane Williams.

18       SSA regulation section 404.2035, provides in pertinent

19   part that representative payees should "[k]eep any benefits

20   received on your behalf separate from his or her own funds and

21   show your ownership of these benefits."

23       Similarly Section 404.2045 of the SSA regulations

24   provides that:

25           After the representative payee has used
             benefit payments consistent with the guidelines in
26           this subpart (see § 404.2040 regarding use of
             benefits), any remaining amount shall be conserved
27           or invested on behalf of the beneficiary.

28                                    6

**United States District Court**

For the Northern District of California

> Conserved funds should be invested in accordance with the rules followed by trustees. Any investment must show clearly that the payee holds the property in trust for the beneficiary.

Section 404.2045

It was undisputed at trial that the accounts into which Berry deposited the money for his son did not comport with these regulations.  The testimony confirmed that the accounts were controlled by Berry's sister, Diane Williams.  Berry had signatory authority over the Wells Fargo account but it was set up and used by Williams for her own purposes. See Govt. Ex. 20 (Wells Fargo account application signed by Diane Williams). Williams was the sole signatory on the Scottrade account as well, and the Pioneer Credit Union Account was Williams' personal account. See R.T. at 424:18-424:25.

Defendant argues that the SSA agent testified that SSA would not have considered failure to maintain accounts in accordance with their regulations as malfeasance. R.T. at 232:8-232:9.  This correctly reflects the testimony at trial. However, the fact that Berry chose to deposit funds into the Wells Fargo account which was available to his sister was evidence which a reasonable jury could have considered in determining that Berry had converted the funds.  The deposit of the one check directly into Diane Williams' Scottrade account legally was a conversion of that particular check, sufficient in and of itself to support the jury's verdict.

The clearest evidence from which the jury could have concluded that Berry converted SSA funds was related to the

**United States District Court**
For the Northern District of California

lump sum back payment check Berry received in 2005. Berry deposited that check for Drew into Wells Fargo account # 5508167219. The beginning balance of that account for the month of September was (-)7.10. On September 16, 2005 Berry deposited the SSA check for Drew in the amount of $42,086. See Gov Ex. 24. Six days later, Berry's sister, Diane Williams withdrew $41,500 from the Wells Fargo account. That withdrawal was a conversion of the funds deposited for Drew and was sufficient evidence from which a reasonable jury could have convicted Berry.

Moreover, looking at the ending balance for the month of September for the Wells Fargo account shows that $41,500 of the SSA payment to Berry was taken by his sister and placed in her personal account and that approximately $288.45 of the SSA money sent for Drew was simply unaccounted for. ($42,086 (SSA check deposited)- $41,500(withdrawal by Diane Williams)-$301.45 (end of the month balance) adjusted by (-)7.10 (amount account was initially overdrawn)). While this latter amount represents only a minor portion of the total money received, legally this missing amount in and of itself also would have been sufficient for the jury to have found that Berry converted a portion of the funds entrusted to him for his son.

The evidence showed that Berry permitted transfer of access and control over all of the funds meant for the sole use and benefit of Drew to the personal account and control of his sister. While defendant argues that there was evidence that Williams had sufficient funds to cover those amounts, the jury

**United States District Court**
For the Northern District of California

1   did not accept the inference from that evidence that Berry had

2   "conserved" the money.  Their rejection of this inference had

3   support in the record.  The government presented evidence at

4   trial that when the SSA asked Berry to return the allegedly

5   "conserved" funds, he did not do so.  See RT 179:1-180:5

6       The government was required to present sufficient

7   evidence from which a rational juror could have found beyond a

8   reasonable doubt that the money, or some portion of it, sent by

9   the SSA for Drew Berry had been used for a purpose other than

10  for Drew Berry.  Given the testimony that: (1)that Williams

11  withdrew $41,500 from the Wells Fargo account and placed it

12  into her own Pioneer Savings account when the only funds in

13  this account were from payments to Berry from the SSA and that

14  she additionally withdrew other amounts from the Wells Fargo

15  account following subsequent deposits of SSA payments; (2)

16  several hundred dollars deposited into the Wells Fargo account

17  in September 2005 was unaccounted for; (3) that one SSA check

18  was deposited directly into Diane Williams' personal Scottrade

19  account; and (4) that when asked by SSA to return any

20  unexpended funds, Berry returned none of the money received

21  from the SSA, the Court finds that there was more than

22  sufficient evidence from which a rational trier of fact could

23  have concluded that the money was converted and not

24  "conserved."  Therefore, the Motion for Acquittal is DENIED.

25

26

27

28

**United States District Court**
For the Northern District of California

B. Motion for a New Trial

   1.  Legal Standard

Berry moves for a new trial under Federal Rule of Criminal Procedure 33. Rule 33 provides that on a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require.  A motion for a new trial should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir.1981).

   2.  Discussion

Berry moves under Federal Rule of Criminal Procedure 33 ("Rule 33") for a new trial on three bases. First, defendant alleges that in its closing argument the government repeatedly made improper references to Berry's failure to testify, impermissibly shifting the burden of proof to Berry. Defendant argues that he is entitled to a new trial based on the alleged inherent prejudice of these comments.

Second, Berry submits that evidence was improperly admitted at trial including hearsay computer printouts from the SSA purporting to reflect interviews of Berry, which under Ninth Circuit law should have been excluded under the public records exception to the hearsay rule. Berry also claims that the government improperly presented documents and testimony which  commented on Berry's failure to respond to two letters from the SSA accusing Berry of criminal misuse.

Finally, Berry argues that the jury instruction defining

the requisite mental state was erroneous.  Berry asserts that he was deprived of a fair trial because the definition given by the Court allowed the jury to convict Berry even if it did not find that he acted knowing that his conduct was "unlawful" and that this knowledge of the illegality of his actions has been required by the Supreme Court.

> a.  Did the Government's Closing Argument Make Improper Reference to Berry's Failure to Testify?

Defendant asserts that the prosecutor both directly and indirectly called attention to Berry's decision not to testify impinging on his right to choose not to testify and requiring a new trial.

A prosecutor's reference is impermissible if it is "manifestly intended to call attention to the defendant's failure to testify or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." United States v. Tarazon, 989 F.2d 1045, 1051-1052 (9th Cir. 1993). Prosecutorial statements to which the defendant objects are reviewed for harmless error, while comments for which no objection is made are reviewed for plain error. United States v. deCruz, 82 F.3d 856, 861 (9th Cir.1996); United States v. Sanchez, 176 F.3d 1214, 1218 (9th Cir.1999).

Defendant argues that during closing argument the prosecutor made statements that implicated the defendant's failure to testify.  The statements at issue are below.

11

**United States District Court**
For the Northern District of California

1    Government Counsel(Ms. Thomas): the defendant does
     not deny the first two elements; that he made an
2    application for benefits for Drew and that he
     received those benefits. So those elements are
3    satisfied, and when you go to jury deliberations,
     you can start at element three.
4
     Mr. Robbins:  your honor, I have to object.  The
5    defendant hasn't done anything.

6    The Court: The objection is sustained.  Rephrase
     your statement, counsel.
7
     Ms. Thomas: The evidence clearly shows that the
8    defendant made an application for benefits.  You
     have seen the application, and that he received
9    those benefits.  You've seen  the 17 united states
     treasury checks the defendant received at his
10   address.

11   RT 501:1-14

12
     Ms. Thomas:  The defendant claims that that check is
13   reimbursement for the   expenses that he incurred
     between 2000 and ...
14
     Mr. Robbins:  same objection, your honor.
15
     The Court:  objection sustained.  You make your argument
16   based upon the evidence introduced at the trial.

17   Ms. Thomas:  I apologize.

18   RT 502:18-24

19
     Ms. Thomas: You also know this was no mistake because
20   the defendant admits that he has no problem managing
     money.
21
     Mr. Robbins:  objection, your honor, same objection as
22   before.

23   The Court:  rephrase your statement.  Refer to the
     evidence.
24
     RT 509-5-10
25

26   In each case, the defense counsel objected, the court

27   sustained the objection and counsel for the government was

28                              12

**United States District Court**
For the Northern District of California

1    required to properly rephrase the question.

2        Defendant further argues that the prosecutor improperly

3    referenced Berry's decision not to testify by attributing

4    "stories," "excuses," and "claims" to defendant personally via

5    a graphic slide, shown to the jury, entitled "Defendant's

6    Stories and Excuses".

> Ms. Thomas: now the defendant has a lot of excuses
> in storage.  We can go to the next slide.
> (Document displayed on screen.  And they are all
> about him.
>
> Mr. Robbins: I object to this slide.  It is
> completely improper.
>
> The court:  take the slide down, please.  Make any
> comment based on the evidence that's been
> introduced.
> (Document removed from screen.)

RT: 511:14-22

    As noted above, this slide was objected to, and the

Court ordered it to be immediately taken down.  The slide,

within a matter of moments, was taken down and there was no

commentary on its contents.

    Had the prosecution referred to expected arguments of

the defense or had referred to "defense counsel," "them,"

"they," or "their", there would be no issue.

    The question for the Court currently is, under Ninth

Circuit law, do these references to the "defendant" require a

new trial, and the answer is that they do not.  While these

references were problematic, none of the cases cited by the

defendant indicate that these comments rise to the level of

requiring a new trial.

13

**United States District Court**
For the Northern District of California

The case most similar to Berry's situation is the

Lincoln case. Lincoln v. Sunn, 807 F.2d 805 (9th Cir. 1987).

In Lincoln, the prosecutor made four arguably improper comments

during his thirty-minute rebuttal argument to which defense

counsel objected twice. The court included a standard jury

instruction cautioning jurors not to draw inferences from the

defendant's failure to testify.

 The prosecutor stated in part:

> [W]e really don't know what happened. And there's
> only one person who can tell us. ... Now in that
> telephone call, there are only two parties
> involved, the caller and the person receiving.
> Kekona, being the person receiving the call, told
> us what the call was about, and there is only one
> other person who can testify with regard to that
> call.

> [T]o expect that ... people would be able to
> identify the person who used the ticket under the
> name of J. Lincoln in April of 1978 would be an
> impossible task. Again, there is only one person
> who can tell you, in addition to Kekona, whether
> he, in fact, did fly from Honolulu to Kaanapali.
> (Objection made and sustained) ...

> And the court and Mr. Seitz have told you the
> defendant need not testify. I suggest, ladies and
> gentlemen of the jury, that these questions with
> regard to the motive, the payoff, who hired him,
> and who paid him are being asked of the wrong
> persons." (Objection made and sustained).
> (Emphasis added)

First the Lincoln court noted that where there are only

two persons at the scene of a crime, and therefore the

defendant is the only witness who could rebut or negate the

government witness's testimony, prosecutorial comment

"suggesting that the jury should have heard more testimony can

only cause the jury to naturally look to the only other

14

**United States District Court**
For the Northern District of California

1    evidence there is-the defendant-and, hence, this could be a

2    prohibited comment on the defendant's failure to testify."

3    Nonetheless, although the court concluded that the prosecutor's

4    remarks in this case were improper, they remanded the issue to

5    the district court to determine, whether the improper conduct,

6    which was followed by curative instructions, prejudiced

7    Lincoln, or whether it constituted harmless error.

8         Similarly in <u>Tarazon</u>, the Ninth Circuit found no

9    constitutional violation. <u>United States v. Tarazon</u>, 989 F.2d

10   1045 (9th Cir. 1993).  In <u>Tarazon</u>, the prosecutor commented:

11        Unless someone wants to get up here and say, I
12        didn't know to distribute cocaine is against the
         law, and you assist your uncle in negotiating the
13        drug offense in negotiating a drug transaction, it
         is intentionally aiding someone in committing a
14        drug offense.

     <u>Id</u>. at 1052.

15

16        The <u>Tarazon</u> court held that reversal is only required if

17   the comment could have affected the verdict. <u>United States v.</u>

18   <u>Pruitt</u>, 719 F.2d 975, 978 (9th Cir.) (per curiam), cert.

19   denied, 464 U.S. 1012(1983). The court noted that the

20   prosecutor's comment suggested to the jury that Tarazon's

21   failure to testify that he acted unintentionally showed that he

22   acted intentionally in committing the crime of which he was

23   ultimately convicted. The court went on to find that the

24   prosecutor's comment violated Tarazon's rights under the Fifth

25   Amendment, but that this "singular, somewhat ambiguous comment"

26   did not constitute a miscarriage of justice or an affront to

27   the integrity of the judicial process, and thus did not require

28                                    15

1   a new trial.

2       In United States v. Pimentel, 654 F.2d 538, 543 (9th

3   Cir. 1981) the Ninth Circuit affirmed the District Court's

4   denial of a new trial where the prosecutor had stated during

5   closing that the jury had "a right to ask for that evidence."

6   The district court judge explained that he had not interpreted

7   the prosecutor's statement as a call for evidence from the

8   defendants or as a comment on the failure of the defendants to

9   testify. He observed that the prosecutor had not used the word

10  "burden," and had not said that the defendant had to come

11  forward with anything. The district judge held that the

12  statement, in context, "would not lend itself to a clear

13  invitation to a jury to hold the defense responsible for not

14  producing evidence ...." See also Soulard, 730 F.2d at 1306-07

15  (no reversal where prosecutorial comment was a single isolated

16  statement, did not stress an inference of guilt from silence as

17  a basis of conviction, and was followed by curative

18  instructions). See Beardslee v. Woodford, 358

19  F.3d 560, 587 (9th Cir. 2004) (holding prosecutorial references

20  to jury not being "able to observe" whether "there was any

21  feeling in the man" to be impermissible but not finding

22  reversible error).

23      While the cases relied on by the defense concur that the

24  prosecution initially improperly phrased some of her closing

25  argument, none of these cases required a new trial on that

26  basis.  Moreover, in this case, each of the problematic

27  statements were objected to, the Court sustained the

28                          16

**United States District Court**
For the Northern District of California

1  objections, and counsel immediately rephrased the questions to

2  refer only to the evidence presented.  These corrections, along

3  with instructions to the jury as to defendant's rights not to

4  testify and that any exercise of the right cannot be held

5  against the defendant, in this case ensured that any errors did

6  not rise to the level of due process violations requiring a new

7  trial.

8          b.   <u>Was Evidence Improperly Admitted</u>?

9          Defendant argues that the court improperly admitted

10 documents which reflect the contents of interviews of Berry

11 conducted by Jerry Fan of the SSA regarding Berry's application

12 for Social Security Child Insurance Benefits. See Govt. Exs.

13 5-7. The defense objected that the exhibits and testimony

14 regarding these exhibits were "public records" which should not

15 have been admitted because they reflected adversarial

16 questioning by a government agent and, he asserts should have

17 been excluded under Federal Rule of Evidence 803(8).

18         The evidentiary rulings of a District Court are reviewed

19 for abuse of discretion. <u>Tritchler v. County of Lake</u>, 358 F.3d

20 1150, 1155 (9th Cir.1994) (citation omitted).

21         Defendant contends that this otherwise hearsay document

22 does not fall within the public records exception because FRE

23 803(8)(C) excludes from the public records exception evidence

24 offered by the government in a criminal trial.

25         Rule 803 provides, in pertinent part:

26             Hearsay Exceptions; Availability of
               Declarant Immaterial.  The following are not
27             excluded by the hearsay rule, even though the

28                                  17

**United States District Court**
For the Northern District of California

declarant is available as a witness:

(6) Records of Regularly Conducted
Activity.--A memorandum, report, record, or data
compilation, in any form, of acts, events,
conditions, opinions, or diagnoses, made at or
near the time by, or from information transmitted
by, a person with knowledge, if kept in the course
of a regularly conducted business activity, and if
it was the regular practice of that business
activity to make the memorandum, report, record or
data compilation, all as shown by the testimony of
the custodian or other qualified witness, or by
certification that complies with Rule 902(11),
Rule 902(12), or a statute permitting
certification, unless the source of information or
the method or circumstances of preparation
indicate lack of trustworthiness. The term
"business" as used in this paragraph includes
business, institution, association, profession, occupation, and
calling of every kind, whether or not conducted for profit.

(8) Public records and reports. Records, reports,
statements, or data compilations, in any form, of
public offices or agencies, setting forth . . .(C)
in civil actions and proceedings and against the
Government in criminal cases, factual findings
resulting from an investigation made pursuant to
authority granted by law, unless the sources of
information or other circumstances indicate lack
of trustworthiness.

FRE 803.

There is no recording of the conversation between the

SSA agent and defendant.  Rather, the oral statements Berry

allegedly made were memorialized on an SSA database and then

SSA generated a report from that database.

During the motions in limine, defendant cited to United

States v. Orellana-Blanco, 249 F.3d 1143, 1150 (9th Cir. 2002).

In Orellana-Blanco, the Ninth Circuit stated that:

In criminal cases, the public records hearsay for which

an exception to inadmissibility is made is limited to records

18

**United States District Court**
For the Northern District of California

of routine, non-adversarial matters made in a non-adversarial setting, reflecting ministerial, objective observations.  It does not apply to the subjective observations, summaries, opinions and conclusions of law enforcement personnel. Id.

In Orellana-Blanco Defendant was convicted of marriage fraud and making a false statement on an immigration document. The report at issue had been made during an INS green card application. A close reading of the case indicates many problems with use of the INS interview including the fact that the interviewer was not available to testify; that there seemed to be issues as to whether the defendant understood the questions and that there was no one standard form used by the INS to understand what the questions actually were.  Such is not the case here.

Berry argued that the phone script read to him was similarly "adversarial" in nature because it required him to understand that his statements were made under penalty of perjury and also because it set out the legal ramifications to Berry for misuse of funds or for making false statements. The Court reviewed the transcript read to Berry and found that the answers required of Berry simply indicating whether or not he understood what was being explained to him, did not amount to an "adversarial" investigation.

This Court has found both at the pretrial motion stage and at the trial that there was no evidence in the record to support that these documents were in any way part of an "investigation" which would then preclude their admission

19

**United States District Court**
For the Northern District of California

pursuant to 803(8)(C).  Nor has defendant provided any citations to the trial record via this motion which would command a finding to the contrary.

       c.   Jury Instructions

    Berry takes issue with the instruction to the jury regarding the intent element of the statute.  A trial court is given substantial latitude in tailoring jury instructions so long as they fairly and adequately cover the issues presented. United States v. Abushi, 682 F.2d at 1299. Neither party, including a criminal defendant, may insist upon any particular language. Id. (quoting United States v. James, 576 F.2d 223, 226 (9th Cir. 1978)).

    The relevant portion of the jury instructions at issue read:

> In order for the defendant to be found guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt . . .
>
> The defendant converted the payments knowingly and willfully.
>
> An act is done knowingly if the defendant is aware of the act and does not act or fail to act through ignorance, mistake, or accident. The government is not required to prove that the defendant knew that his acts or omissions were unlawful.  The government is required to prove that the defendant knew that the Social Security funds paid to him were used for the use and benefit of a person other than the minor son, Drew Berry.

    Defendant had argued prior to the jury being instructed that the court needed to separately define the term "willfully" and that the term should have been defined: "An act is done

**United States District Court**
For the Northern District of California

willfully if done voluntarily and intentionally with the
purpose of violating a known legal duty." Berry requested, in
the alternative that the Court instruct the jury that to be
"willful," an act must have been undertaken with the knowledge
that it was "unlawful."

Defendant relies for support on the Supreme Court's
decision in a firearms case, <u>Bryan v. United States</u>, 524 U.S.
184, 191-192 (1998).  First, the Court notes that while the
Supreme Court in <u>Bryan</u> found that the trial court's instruction
on "willfully" was deficient in same way that Berry claims is
the case here, the Supreme Court saw no basis for ordering a
new trial.  Therefore, even assuming that the instruction was
in this case was in error, under <u>Bryan</u>, no new trial is
required as a result.

There is nothing in <u>Bryan</u> which would have required the
requested instruction that the government prove that the
defendant acted "voluntarily and intentionally with the purpose
of violating a known legal duty."  The only issue is whether
the alternatively requested instruction that the exact language
requested by Berry, namely that in order to be "willful" the
jury would have to find that any act of Berry's "must have been
undertaken with the knowledge that it was 'unlawful'".

The Supreme Court noted that the word "willfully" in the
criminal law typically refers to a culpable state of mind.  The
<u>Bryan</u> court specifically rejected the notion that the trial
court had needed to instruct that the government needed to
prove that Bryan had knowledge of the specific federal

21

**United States District Court**
For the Northern District of California

1   licensing requirement he was charged with violating.

2        The Supreme Court looked to the prior case of <u>Ratzlaf v.</u>
3   <u>United States</u>, 510 U.S. 135 (1994).  In <u>Ratzlaf</u> the Supreme
4   Court had concluded that in order to find that defendant's
5   actions had been "a willful violation" the jury had to find
6   that the defendant knew that his structuring of cash
7   transactions to avoid a reporting requirement was unlawful.

8        The instruction given by this Court comports with the
9   holding of <u>Bryan</u>.  The <u>Bryan</u> Court held that in order to be
10   "willful" defendant must act with "knowledge that his conduct
11   was unlawful."  <u>Id</u>. at 193 (emphasis added). This Court's
12   instruction stated that: "The government is required to prove
13   that the defendant [Berry] knew that the Social Security funds
14   paid to him were used for the use and benefit of a person other
15   than the minor son, Drew Berry", i.e that the acts unlawfully
16   violated the statute.

17        While Berry  goes on to argue that a specific
18   instruction requiring knowledge of the statute is required
19   because this statute is "highly technical," the criminal aspect
20   is actually straightforward.  As expressed in the jury
21   instructions, under the statute there is only one
22   straightforward requirement -defendant could only use the
23   monies entrusted to him by the SSA for the use and benefit of
24   his minor son and not for a use and benefit other than for his
25   minor son.

26        Finally defendant argues that the above-referenced jury
27   instruction was in error because the instruction on "willfully"

28                                     22

United States District Court

For the Northern District of California

1  "essentially duplicated" the Court's instruction for

2  "knowingly." Defendant argues that the instruction therefore

3  does not fully comport with general principles of statutory

4  interpretation calling for different words in a statute to be

5  given different meaning and effect.  See Russell v. Law

6  Enforcement Assistance Admin., 637 F.2d 354, 356 (5th Cir.

7  1981).  Given the latitude courts are given to craft

8  instructions, as long as the substance of the required standard

9  of proof is met, as it was here, this Court did not need to

10 adopt the specific language requested by defendant.

11

12     Accordingly the Motion for Acquittal and the Motion for a

13 New Trial are both DENIED.

14

15

16     IT IS SO ORDERED.

17 Dated: April 9, 2010

18                                  D. Lowell Jensen
                                    United States District Judge

19

20

21

22

23

24

25

26

27

28                            23